# UNITED STATES DISTRICT COURT
# FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM F. WALKER,<br><br>          Plaintiff<br><br>     v.<br><br>NCO FINANCIAL SYSTEMS, INC.,<br><br>          Defendant | )<br>)<br>)<br>)<br>)  **Civil Action No.: 10-3907**<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S
## MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS

Pursuant to the terms of Defendant's Offer of Judgment, Plaintiff,  William F. Walker submits this Memorandum in support of his Motion for an Award of Attorney's Fees and Costs in the amount of $2,925.50, as provided under 15 U.S.C. §1692k(a)(3).

## I.    PROCEDURAL HISTORY

On August 5, 2010 Plaintiff filed his Complaint against Defendant NCO Financial Systems, Inc.   ("NCO") alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq*. Plaintiff alleged that Defendant contacted him on numerous occasions via telephone, failed to identify itself, failed to provide information regarding the alleged debt, and listed the debt on Plaintiff's credit report.

On or about September 3, 2010, Plaintiff received and accepted Defendant's Offer of Judgment. It provided that Plaintiff would receive $1,000, the maximum amount of statutory damages under the FDCPA. It also provided: "The Judgment entered shall also include an

amount for reasonable costs and attorney's fees accrued through the date of this Offer of Judgment. Reasonable costs and attorney's fees are to be agreed upon by the parties, or, if the parties are unable to agree, to be determined by the Court on application by Plaintiffs counsel subject to the limitation that attorney's fees and costs are cut off as of the date of this Offer of Judgment[.]"   A true and correct copy of the Offer of Judgment is attached hereto as Exhibit "A".   The parties have been unable to settle the amount of attorney's fees and costs to be awarded.

Plaintiff's attorneys expended 8.9 hours (inclusive of attorneys, paralegals and clerical staff) in prosecution of the claim Plaintiff as set forth below.

The hourly rate for the services provided by attorney Craig Thor Kimmel is and has been awarded in other cases at $425.00 per hour[1]; however, due to the lack of complexity of the case, Mr. Kimmel *voluntarily reduces his hourly rate* to $350.00, a discount of approximately 20 percent for the 5.5 hours of his billable time. The reasonable attorney fee for the services provided by Mr. Kimmel after this reduction is $1,925.00.

The hourly rate for the services provided by paralegals Christy Sunchych (0.8 hours) and Jason Ryan (2.4 hours) is the same; $165.00. Their efforts were expended for routine tasks which do not vary based upon the complexity of the case. The paralegal time expended totals 3.2 hours, for a total for their combined services of $620.50.

The hourly rate for services provided by IT professional Jeff Ehrmann is $150.00.  Mr. Ehrmann expended 0.2 hours for conversion of media as required for court filing.  The reasonable fee for his time is $30.

---

[1] For example, the Honorable J. Curtis Joyner recently awarded $425 per hour to Mr. Kimmel in Danielle Walker v. NCO Financial Systems, Inc., 10-CV-2199.  See Exhibit "F".

Total costs expended on the case total $350.00 for filing the complaint, the fee charged by the clerk of court.

Costs relating to copy charges, postage and telephone were expended on the file total more than $100, but are not being submitted for reimbursement in this case.

The total costs and attorney's fees requested by Kimmel & Silverman, P.C. totals $2,925.50.   A true and correct copy of Kimmel & Silverman, P.C.'s invoice for services is attached hereto as Exhibit "B".

**II.**   **ARGUMENT**

    **A.** **THE PLAIN LANGUAGE OF THE FDCPA MANDATES THAT PLAINTIFF IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND COSTS.**

The Offer of Judgment specifically provides for Plaintiff to receive fees and costs in connection with the prosecution of this matter. In addition, 15 U.S.C. §1692k(a) provides in pertinent part:

> [A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person **is liable** to such person in an amount equal to the sum of—
>
> \*    \*    \*
>
> **(3)** in the case of any successful action to enforce the foregoing liability, **the costs of the action, together with a reasonable attorney's fee as determined by the court**.

15 U.S.C. §1692k(a) (emphasis added).

"Given the structure of [15 U.S.C. §1692k], attorney's fees should not be construed as a special or discretionary remedy; rather, the Act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general. *Graziano v. Walkeron*, 950 F. 2d 107, 113 (3d. Cir. 1991) (reiterating that several courts have required an award of attorney's fees even where violations were so minimal

that statutory damages were not warranted); *see also French v. Corporate Receivables, Inc.,* 489 F. 3d 402 (1st Cir. 2007) (finding that an award of attorney's fees to successful plaintiffs under the FDCPA is obligatory); *Miller v. Midpoint Resolution Group, LLC,* 608 F. Supp. 2d 389 (W.D. N.Y. 2009) (holding that once a violation of the FDCPA is found, an award of attorney's fees and costs is mandatory); *Teng v. Metropolitan Retail Recovery*, 851 F. Supp 61, (E.D. N.Y., 1994) (noting that the structure of the fee shifting provision included in the FDCPA mandates attorney's fees as the means of fulfilling congressional intent that the act be enforced by private attorneys general); *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 628 (4th. Cir. 1995); and *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir. 1989).

Discussing the mandatory nature of the fee shifting provision included in the FDCPA, the Ninth Circuit detailed that "[t]he reason for mandatory fees is that congress chose a 'private attorney general' approach to assume enforcement of the FDCPA." *Camacho v. Bridgeport Financial, Inc.*, 523 F. 3d 973, 978 (9th Cir. 2008); *see also Tolentino v. Friedman*, 46 F. 3d 645, 651-652 (7th Cir. 1995); *Graziano, 950 F.2d at* 113.  The Seventh Circuit, in similar fashion, explained that the public as a whole has an interest in the vindication of statutory rights, and Congress' specific intent under the FDCPA was to facilitate an individual plaintiff's ability to pursue an action where the economic burden of costs and fees would otherwise preclude enforcement.  *Tolentino*, 46 F. 3d at 652.  Quoting the United States Supreme Court, the Seventh Circuit additionally made clear: "Unlike most private tort litigants, a plaintiff who brings an FDCPA action seeks to vindicate important rights that cannot be valued solely in monetary terms." *Id*.

Thus, the FDCPA mandates that the recovery of attorney's fees and costs in connection with successful prosecution of an action under the FDCPA is integral to the success of the policy

goals underlying the FDCPA.  By virtue of the Offer of Judgment, Defendant has stipulated to submission of the attorney's fees and costs to the Court, if the parties could not resolve the matter by agreement.

**B. <u>PUBLIC POLICY SUPPORTS AN AWARD OF ATTORNEYS' FEES AND COSTS TO PLAINTIFF.</u>**

The FDCPA was enacted to eliminate abusive debt collection practices by debt collectors, to insure those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.  15 U.S.C. §1692.  Congress in fact announced in enacting the FDCPA: "There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id*.  The purpose of the FDCPA, as stated by Congress, is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Id*.  The fee shifting provision included in the FDCPA enables consumers to vindicate their personal rights while benefiting society in general, resulting in greater deterrence of fraudulent and deceptive business practices.  *Russell v. Equifax A.R.S.*, 74 F. 3d 30, 33 (2d Cir. 1996); *Foti v. NCO FINANCIAL SYSTEMS, INC.* , 424 F. Supp. 2d 643, 653 (S.D. N.Y. 2006).

Difficulty in enforcing statutes like the FDCPA, and its state law counterparts, by private attorneys general arises in part because, unlike personal injury actions, at the commencement of litigation the potential for recovery is not clear.  *Bowers v. Transamerica Title Insurance Company*, 675 P.2d 193, 204 (Wash. 1983).  What's more, the amount in controversy is usually

too small to induce an attorney to commence litigation on a percentage contingency.  *Id*.  As well, litigation costs are an expense of doing business for corporations, whereas the average consumer doesn't have the economic staying power to engage in protracted litigation, thereby providing larger companies a unique advantage over consumers.  *Chrysler Corporation v. Maiocco*, 209 Conn. 579, 552 A.2d 1207 (Conn. 1989).

Accordingly, "the purpose of the statutory fee award is to benefit the plaintiff by allowing the plaintiff to obtain counsel in order to pursue redress for relatively small claims."  *Majcher v. Laurel Motors, Inc*., 287 Ill. App. 3d 719, 732 (Ill. Ct. App. 1997); *see also Ford Motor Co. v. Mayes*, 575 S.W. 2d 480, 488 (Ky. Ct. App. 1978); *Grove v. Huffman*, 262 Ill. App.3d 531, 539 (Ill. Ct. Ap. 1994) ("To hold otherwise would discourage injured parties from seeking relief…and would be counterproductive to the [congressional] purpose…").  By providing the private bar with incentive to involve itself in consumer litigation through fee-shifting, the government is relieved of the costs of protecting consumers while insuring that consumers may still avail themselves of their statutory rights.

Lacking a sufficient award of attorney's fees and costs, an entry of judgment for the consumer would not make the consumer whole, as the average consumer would be unable to pay his attorney's fees, creating a deterrent for private attorneys to pursue this type of action.   Fee shifting provisions are put in place to remove the difficulty of obtaining counsel in pursuing claims which are relatively small compared to potential legal costs.  *Id*. at 539.

C.    **AN AWARD OF ATTORNEYS' FEES AND COSTS UNDER THE FDCPA IS TO BE BASED UPON ACTUAL TIME EXPENDED, AND NOT THE AMOUNT OF RECOVERY.**

Enforcement of a plaintiff's rights under the FDCPA through the courts is prohibitively expensive.  Awarding fees based upon actual time expended, rather than amount of recovery,

makes economically feasible the pursuit of remedies by consumers in state and federal courts.[2]

There exists a strong presumption that the lodestar amount represents an adequate and proper fee

award.  *Hensley v. Eckhart*, 461 U.S. 424, 533 (1983); *see also City of Riverside,* 477 U.S. at 576

("[R]easonable attorney's fees ... are not conditioned upon and need not be proportionate to an

award of money damages."); *Lewis v. Kendrick,* 944 F.2d 949, 957 (1st Cir.1991) ("[T]he fee is

not limited by the size of the recovery, but may, in appropriate instances, greatly exceed it.").

> The U.S. Supreme Court has explained the calculation for an award of attorneys' fees:
>
> The most useful starting point for determining the amount of a reasonable fee is the
> number of hours reasonably expended on the litigation multiplied by a reasonable hourly
> rate. The calculation provides an objective basis on which to make an initial estimate of
> the value of a lawyer's services.

*Hensley*, 461 U.S. at 433. Although this decision, and others cited hereinafter, arise in the

context of the Civil Rights Attorney's Fees Award Act, 42 U.S.C. §1988, these criteria are

equally applicable here. "The standards set forth in this opinion are generally applicable in all

cases in which Congress has authorized an award of fees to a `prevailing party.'" Id. 103 S. Ct. at

1939, n.7. "We have stated in the past that fee-shifting statutes' similar language is `a strong

---

[2] Analogous federal consumer protection statutes have likewise been interpreted in such manner.  *See* S.Rep. 93-
151 at 24 (stating "[i]t should be noted that an attorneys' fee is to be based on actual time expended rather than
being tied to any percentage of the recovery").  Courts analyzing the fee shifting provision included in the federal
Magnuson-Moss Warranty Act have noted: "In consumer protection as this, the monetary value of the case is
typically low. If courts focus only on the dollar value and the result of the case when awarding attorney fees, the
remedial purposes of the statutes in question will be thwarted. Simply put, if attorney fee awards in these cases do
not provide a reasonable return, it will be economically impossible for attorneys to represent their clients. Thus,
practically speaking, the door to the courtroom will be closed to all but those with either potentially substantial
damages, or those with sufficient economic resources to afford the litigation expenses involved. Such a situation
would indeed be ironic: it is but precisely those with ordinary consumer complaints and those who cannot afford
their attorney fees for whom these remedial acts are intended." *Jordan v Transnational Motors, Inc.*, 537 N.W.2d
471 (Mich. 1995); *Rice v Mike Ferrell Ford, Inc.*, 403 S.E. 2d 73 (W. Va. 1987); *see also Bobby Jones v.
Fleetwood Motor Homes*, 127 F. Supp.2d 958, 967 (N.D. Ill. 2000) (declining to reduce the consumer's award of
attorneys' fees simply because the consumer recovered only $5,000 on a $92,000 motor home or only five (5)
percent of the amounts sought: "As previously indicated, the statute provides that fee awards are to be based on
time actually expended and legislative history supports that the fee award is not to be tied to a percentage of the
recovery.  Therefore, as long as the time expended was reasonable, it would be inappropriate to reduce the fee
award because it might be considered disproportionate to the $5,000.00 in damages that that plaintiff actually
recovered.  No reduction will be made solely based on the amount of damages plaintiff obtained.").

indication that they are to be interpreted alike." *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754; 109 S. Ct. 2732, 2735 n.2.; 105 L. Ed. 2d 639 (1989) (quoting *Northcross v. Memphis Bd. of Education*, 412 U.S. 427, 428; 93 S. Ct. 2201, 2202; 37 L. Ed. 2d 48 (1973).

The multiplication of the reasonable number of hours expended times the reasonable hourly rate is referred to as the "lodestar." *Friend v. Kolodzieczak*, 72 F.3d 1386, 1389 (9th Cir. 1995). The market value in the relevant legal community of the legal services performed is used to determine a reasonable attorney fee. *Blum v. Stenson*, 465 U.S. 886 (1984). "In communities, the marketplace has set a value for the services of attorneys, and the hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience and skill of the individual attorney." *Id.* The lodestar figure is presumed to be the reasonable fee contemplated under a fee shifting statute. *Saleh v. Moore*, 95 F. Supp. 2d 555 (E.D. VA. 2000).

The Fourth Circuit, in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (1978), cert. denied, 439 U.S. 934 (1978), held that, when determining the amount of attorney's fees to be awarded under the Truth in Lending Act [Title I of the Federal Consumer Credit Protection Act, Congress' plenary regulation of the national consumer credit industry, of which the FDCPA is Title VIII], district courts must consider the twelve factors specified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Barber,* 577 F2d at 226. The *Johnson* factors are:

 (1) the time and labor required;

 (2) the novelty and difficulty of the questions; [3]

 (3) the skill requisite to perform the legal services properly;

 (4) preclusion of other employment by the attorney due to acceptance of the case;

 (5) the customary fee in the community;

---

[3] As stated above, this factor has been accounted for in the voluntary reduction of Mr. Kimmel's hourly rate from $425 to $350.

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount of time involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*E.E.O.C. v. Service News Co.*, 898 F.2d 958 (4th Cir. 1990). ("In *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir.), *cert. denied*, 439 U.S. 934, 99 S. Ct. 329, 58 L. Ed. 2d 330 (1978), the court held that courts must consider and discuss the twelve factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974), to determine a reasonable fee. …. As noted in *Daly v. Hill*, 790 F.2d 1071 (4th Cir. 1986), these factors should be considered in determining the reasonable rate and the reasonable hours, which are then multiplied to determine the lodestar figure which will normally reflect a reasonable fee." See *Blum v. Stevenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 1544, 79 L.Ed. 891 (1984).").

As explained by the Fourth Circuit, when a statute mandates fees, "[t]he language is imperative: costs and reasonable fees must be awarded to a plaintiff who brings a successful action. The only variable in the calculation is the amount of attorneys' fees, the determination of which is left to the discretion of the district court with the stipulation that the fees be reasonable." *Nigh v. Koons Buick* 478 F.3d 183, 185 (4th Cir. 2007)(regarding the Truth in Lending Act but equally applicable to the FDCPA). There is no strict formula as to how these factors are to be applied. *Trimper v. City of Norfolk, Va.*, 846 F. Supp. 1295, 1303 (E.D. Va. 1994). Once a figure for attorney's fees is calculated using part of the *Johnson* factors, that amount becomes the

"lodestar" which can then be adjusted upwards or downwards, again using the remaining *Johnson* factors. *Hensley*, 461 U.S. at 433-34. "[M]any of those factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate" *Id.* at 461 U.S. at 434 n.9, 103 S.Ct. at 1940 n.9. If the lodestar figure is properly calculated, adjustment will in most cases be unnecessary. *Daly*, 790 F.2d at 1078.

Also significant, particular to the lodestar calculation, the hourly rate for each advocate is to be based on the prevailing rate in the community for that individual's level of legal skill and experience. *Blum,* 465 U.S. 886. The Seventh Circuit observed, with explicit reference to the FDCPA:

> In order to encourage able counsel to undertake FDCPA cases, as congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases.

> In order to encourage able counsel to undertake FDCPA cases, as congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases. As we noted in *Gusman v. Unisys Corp.,* 986 F.2d 1146, 1150 (7th Cir.1993),

> "Our recent cases have stressed that the best measure of the cost of an attorney's time is what that attorney could earn from paying clients. For a busy attorney, this is the standard hourly rate. If he were not representing this plaintiff in this case, the lawyer could sell the same time to someone else. That other person's willingness to pay establishes the market's valuation of the attorney's services."

*Tolentino*, 46 F. 3d at 652.

The Third Circuit similarly stated:

> Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the

congressional policy of redressing public interest claims will be vindicated.

*Student Public Interest Research Group v. AT & T Bell Laboratories,* 842 F.2d 1436, 1449 (3d

Cir.1988)

In most cases filed pursuant to the FDCPA an award of attorneys' fees to a prevailing

party greatly exceeds the damage award.  *See Cope v. Duggins*, 203 F. Supp 2d 650 (E.D. La.

2002; *Silva v. National Telewire Corp*., 2001 U.S. Dist. LEXIS 20717 (D. N.H. 2001) (awarding

attorneys' fees in the amount of $59,288.50 and costs and expenses in the amount of $5,338.45);

*Norton*, 36 F. Supp 2d 216.

### 1.    <u>The time and labor required</u>.

The Eastern District of Wisconsin has stated, "[W]hen it comes time for the court to

award the fees, it must not penalize [Plaintiff]'s attorneys for responding to [Defendant]'s

defense. . . . Law is labor intensive; lawyers are paid for the diligence and the intelligence,

commodities that cannot be mass produced on an assembly line." *Diettrich v. Northwest Airlines*,

967 F.Supp. 1132, 1997 U.S. Dist. LEXIS 9071, *6-7 (E.D.Wis. 1997) *rev'd on other grounds*

168 F.3d 961 (7th Cir. 1999).  The "primary concern in evaluating a request for attorney fees is

that the fee awarded be reasonable." *Paschal v. Flagstar Bank, FSB*, 297 F.3d 431, 433 (6th Cir.

2002) (internal quotes omitted). The Sixth Circuit held that the district court did not abuse its

discretion in awarding $160,766.80 in attorney fees based on 36 pages of descriptive billing;

each page included detailed descriptions of how the attorney used the billed hours. *Id.* at 434.

At Kimmel & Silverman each FDCPA case must by necessity and professional mandate,

be evaluated and handled on an individual basis.  There is no "assembly line" approach to

handling FDCPA cases. Mr. Kimmel handled Mr. Walker's claim from initial client interview

and evaluation and maintained direct day-to-day direct control over its prosecution. For tasks that

were better and more efficiently handled by associates and staff, Mr. Kimmel called upon them to assist him. After Defendant was served, Mr. Kimmel and opposing counsel communicated in an attempt to discuss settlement, but very shortly thereafter, Defendant served an Offer of Judgment.  It is clear the effort and preparation initially put into this matter in vetting the claim and preparing a well pled complaint paid immediate dividends by achieving a speedy resolution. Notably, Plaintiff recovered his full statutory damages, $1,000.  Upon receipt of the Offer of Judgment, Mr. Kimmel reviewed the document, and counseled his client to consider his response. The records of hours submitted by Kimmel & Silverman P.C. contain pages of detailed descriptions of work performed (redacted as appropriate) to demonstrate the effort expended on the file.  <u>See</u> Exhibit "B".  Respectfully, Plaintiff asserts that the time expended was modest under the circumstances and is due to counsel's nearly 21 years of experience exclusively representing consumers in consumer protection litigation.

Further, Plaintiff's firm is relatively small compared to firms such as that of Defendant. The practice is located in Ambler, Pennsylvania. As stated in *Bailey v. District of Columbia*, 389 F. Supp. 888, 891 (D.D.C. 1993), "…attorneys, like plaintiff's counsel, operating either as solo practitioners or in small firms, often lack the resources to retain a large staff of junior lawyers who could handle (certain more clerically related) tasks more economically. Denying plaintiffs compensation for these tasks would unfairly punish plaintiffs and their counsel for not staffing this case as if they had the manpower of a major law firm."  *See also Withers v. Eveland*, 997 F. Supp. at 740, and *Morgan v. Credit Adjustment Board*, 1998 U.S. Dist. Lexis 8135 at *5. In each case, the Court noted that counsel is a solo practitioner who performs the majority of his own work, and granted the entire fee request to the attorney.

Mr. Kimmel personally expended the requisite amount of time reviewing the case, preparing pleadings and litigating to conclusion in a highly efficient and professional manner, without bravado or waste. His time is not excessive in any regard, certainly not for a case that he actively worked on for nearly 5 months. Mr. Kimmel could have spent it on other more lucrative endeavors, which is appropriate for the Court to consider. *Jones v. Robert Vest*, 2000 U.S. Dist. LEXIS at *13.   The time spent by Plaintiff's counsel to bring this litigation to a successful resolution is therefore reasonable and quite swift, providing no reason to adjust the lodestar downward.

### 2.       The novelty and difficulty of the questions.

Determining whether a potential client has a FDCPA claim or not is not always an easy task; it requires an attorney with knowledge and experience in this area.   There is a vast amount of case law, some of which conflicts and the attorney must be familiar with that case law, and how it applies to the facts of each client's case.   The attorney must also know what information and documentation is necessary to establish each client's individual claim.

Further, Even if an FDCPA case is not legally complex, the facts often make it "novel" both in the way it is argued and the way it is defended. As with most things that take care to do well, "the devil is in the details".

### 3.       The skill requisite to perform the legal services properly.

There are only a limited number of attorneys in the legal community who actively litigate plaintiff's FDCPA claims. The overwhelming majority of practicing lawyers in Eastern Pennsylvania simply do not have a thorough understanding of the claim(s), or may turn away cases, or may feel there is a violation but cannot articulate the claim properly. More often than

not the FDCPA practitioner succeeds where others do not due to requisite skill to perform the legal services properly.

As an example, the pleadings in this matter do not read like "cookie cutter" vague allegations from a generic form, but are factually specific, perhaps overly so for notice pleading requirements. Significant but not excessive time and a generous amount of fact gathering are essential to preparing a winning complaint, or perhaps one that the opponent will read and immediately wish to resolve, such as here. Oddly, Mr. Kimmel's experience actually cuts time being expended on the file, as he can efficiently review facts and ascertain quickly what is needed to present the best FDCPA claim for his client, with the goal being resolution, not protracted litigation.

The Certification of Mr. Kimmel shows clearly that he is an accomplished consumer law practitioner, with over twenty years litigation experience. See Exhibit "C".  More than 5 years ago this Court recognized that Mr. Kimmel and his firm possess a notable level of experience in the area of consumer protection litigation. *See e.g. Stitsworth v. Ford Motor Company*, U.S.D.C., E.D. Pa., 95-cv-5763; *see also Posner v. Mitsubishi,* U.S.D.C., E.D. Pa. 95-CV-6099. Mr. Kimmel and his firm have only added to their achievements in the time since these opinions were written.

Mr. Kimmel has represented thousands of consumers since being admitted to the Bar in 1989. His practice in the Commonwealths of Pennsylvania and Massachusetts and the State of New York has benefitted consumers equally well.  Mr. Kimmel is also admitted to practice before the District Courts of the Middle District of Pennsylvania, Western District of Pennsylvania, the Southern District of New York, the Western District of New York, the Northern District of New York, The District of Massachusetts (all), the Eastern District of Texas,

and the District of Colorado.   He is an active in the Philadelphia Trial Lawyers Association, the Pennsylvania Bar Association and the New York Bar Association, and also a member in good standing of the National Association of Consumer Advocates and the American Bar Association. Since 1997, he has served as legal consultant to the Pennsylvania House of Representatives, Consumer Affairs Committee, and has been credited with authoring the very first Computer Lemon Law bill, which served as a model not only for Pennsylvania, but for Illinois, Connecticut and California.   He primarily authored the only two amendments to the Pennsylvania Lemon Law that were ever adopted since its passage in 1983: (1) inclusion of leased vehicles and (2) notice / penalty  provisions involving reacquired vehicle sales.   He has briefed and argued cases before the United States Court of Appeals for the Third Circuit in matters of national impact, specifically relating toe 16 CFR 703 and the American Arbitration Act of 1929.   He has been interviewed more than 200 times for newspapers, magazines, television and radio, as well as being regularly featured as consumer correspondent on programs and talk shows. He has also presented Continuing Legal Education seminars for the Bar and spoken for professional organizations throughout the nation.  See Exhibit "C".

Finally, the Court may wish to recognize that Kimmel & Silverman, P.C. as a firm is willing to take cases on behalf of clients such as Mr. Walker, performing an important public service that too often goes overlooked. Indeed, but for a handful of similar attorneys in the legal community, representation would be hard to secure. An award of the costs and fees reasonably earned for this type of specialized representation therefore should be made.

### 4.      The preclusion of other employment.

There are substantial opportunity costs in preparing a federal civil action. The time expended by counsel was time which would have been spent on other matters had this case not

been filed. It is impossible to know for certain what other cases may have been precluded due to the representation of Mr. Walker, but it is clear that time spent on this case could have been devoted to other matters.  See Exhibit "C", Certification of Craig Thor Kimmel.

Under this factor, all of Plaintiff's attorneys' time should be fairly compensated.

### 5.      The customary fee for like work in the community.

The hourly rate for each advocate is to be based on the prevailing rate in the community for that individual's level of legal skill and experience.  *Blum,* 465 U.S. 886.   The Seventh Circuit observed, with explicit reference to the FDCPA:

> In order to encourage able counsel to undertake FDCPA cases, as congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases.

> In order to encourage able counsel to undertake FDCPA cases, as congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases. As we noted in *Gusman v. Unisys Corp.,* 986 F.2d 1146, 1150 (7th Cir.1993),

> "Our recent cases have stressed that the best measure of the cost of an attorney's time is what that attorney could earn from paying clients. For a busy attorney, this is the standard hourly rate. If he were not representing this plaintiff in this case, the lawyer could sell the same time to someone else. That other person's willingness to pay establishes the market's valuation of the attorney's services."

*Tolentino*, 46 F. 3d at 652.

The Third Circuit similarly stated:

> Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.

*Student Public Interest Research Group,* 842 F.2d at 1449.

In most cases filed pursuant to the FDCPA an award of attorneys' fees to a prevailing party greatly exceeds the damage award. *See Cope*, 203 F. Supp 2d 650; *Silva*, 2001 U.S. Dist. LEXIS 20717 (awarding attorneys' fees in the amount of $59,288.50 and costs and expenses in the amount of $5,338.45); *Norton*, 36 F. Supp 2d 216.

Plaintiff's attorneys' fee request is within the prevailing market range in this type of representation. The U.S. Supreme Court has stated: "The statute and legislative history establish that 'reasonable fees' under section 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel." *Blum,* 465 U.S. at 895 (footnote omitted). "In order to encourage able counsel to undertake FDCPA cases, as Congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases . . . . Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." *Tolentino* 46 F.3d 645; *also see Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000).

The Seventh Circuit reversed a district court's denial of attorney fees even though the plaintiffs only recovered $100 ($50 each) as FDCPA statutory damages and remanded for determination of an award of attorney fees. *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164 (7th Cir. 1997). Of course, the amount of reasonable attorneys fees awarded pursuant to the FDCPA is left to the sound discretion of the judge. *Schimmel v. Slaughter*, 975 F.Supp. 1481, 1484 (M.D.Ga. 1997).

Plaintiff's fee request is well within the range of similar work. The current hourly billing rate of Mr. Kimmel is $425.00 and he has received it from courts in individual and class action claims. Yet, he has voluntarily reduced the rate to $350.00. See Exhibit "C".

The customary fee range in the community shows that Plaintiff's counsel's hourly rates are reasonable. This *Johnson* factor is addressed in greater detail under factor number 12, *infra*.

The hourly rates of Plaintiff's attorneys delineated in Plaintiff's Statement of Services are commensurate with the experience and training of each employee at Kimmel & Silverman, P.C. These rates are also supported by the 2007 Consumer Law Attorney Fee Survey, the U.S. Attorney's "Laffey Matrix," as well as the affidavits of other consumer advocates. Numerous recent FDCPA cases have also approved rates of at least $300.00 per hour for experienced attorneys who were experts in the field of consumer protection law. *See e.g. Dowling v. Litton Loan Servicing, LP*, 320 Fed. Appx. 442 (6th Cir. 2009) ($300 hourly rate fell within range of reasonableness for litigators of counsel's skill level and experience in that community), *Larsen v. JBC Legal Group, P.C.* 588 F. Supp 2d 360 (E.D. N.Y. 2008) as amended, (Dec. 18, 2008) (hourly rate of $300 was reasonable where attorney had practiced law for 17 years, focused on consumer law for 7 years, and had significant experience in consumer protection litigation), *Young v. Diversified Consultants, Inc.*, 554 F. Supp. 2d 954 (D. Minn. 2008) ($300 per hour for one attorney and $325 per hour for a more experienced attorney were reasonable where both were experts in FDCPA litigation), *Cope*, 203 F. Supp. 2d 650 (the reasonable hourly rate for attorneys fees under the FDCPA is the prevailing market rate for attorneys of comparable experience in cases of similar complexity). In fact, according to the Seventh Circuit, paying counsel in an FDCPA case at rates *lower* than those that they could obtain in the marketplace is

*inconsistent* with the congressional desire to enforce the FDCPA through private actions. *Tolentino v. Friedman*, 46 F. 3d 645 (7th Cir. 1995).

> **a.     The Experience Of The Attorneys At Kimmel & Silverman Provides Support For The Hourly Rates Requested.**

Plaintiff's attorneys' experience is summarized in the attorney profiles attached hereto as Exhibit "D" and in the Certification of Craig Thor Kimmel.  See Exhibit "C".

> **b.     The Rates Sought By Kimmel & Silverman Are Reasonable Compared With The 2007 Consumer Law Attorney Fee Survey Of Prevailing Market Rates.**

In the fall of 2007, a survey was conducted of consumer advocates across the country to determine the rates charged by attorneys practicing in the area of consumer protection, grouped by "attorney's years in practice, location of practice, and size of firm."  See 2007 Consumer Law Attorney Fee Survey, attached hereto as Exhibit "E".  Page 6 of the attached survey shows that the average billing rate for firms with more than 5 attorneys in Texas is $425 per hour.  This is substantially more than rates sought by Plaintiff's attorneys.

> **c.     The Rates Sought By Kimmel & Silverman Are Reasonable Compared With The United States Attorney's Office's "Laffey Matrix."**

The attorneys' fees rates requested by Plaintiff through Plaintiff's attorneys' Statement of Services are commensurate with the prevailing rates for attorneys that practice federal law.  This case was filed pursuant to a federal remedial statute, the FDCPA, so it is fitting to compare rates charged by other attorneys practicing federal law to determine an appropriate rate.  *See Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C. 1983) (wherein the court compared the rates of attorneys practicing under federal claims with fee-shifting provisions to reach a hybrid rate).

The United States Attorney's Office, Civil Division, took the *Laffey* court's analysis one step further, creating the "Laffey Matix" to reflect how inflation has changed billing rates over the years.    The "Laffey Matrix" clearly demonstrates that the rates sought by Plaintiff's attorneys herein are reasonable compared to recognized rates for attorneys' with similar experience.  The "Laffey Matrix" is incorporated into this Fee Petition in its entirety:[4]



### Civil Division

### LAFFEY MATRIX 2003-2008

Years (Rate for June 1 - May 31, based on prior year's CPI-U)

| Experience | 03-04 | 04-05 | 05-06 | 06-07 | 07-08 |
|---|---|---|---|---|---|
| 20+ years | 380 | 390 | 405 | 425 | 440 |
| 11-19 years | 335 | 345 | 360 | 375 | 390 |
| 8-10 years | 270 | 280 | 290 | 305 | 315 |
| 4-7 years | 220 | 225 | 235 | 245 | 255 |
| 1-3 years | 180 | 185 | 195 | 205 | 215 |

---

[4] This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. The matrix is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to recover "reasonable" attorney's fees. *See, e.g.,* 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412 (b) (Equal Access to Justice Act). The matrix does *not* apply in cases in which the hourly rate is limited by statute. *See* 28 U.S.C. § 2412(d).

The column headed "Experience" refers to the years following the attorney's graduation from law school. The various "brackets" are intended to correspond to "junior associates" (1-3 years after law school graduation), "senior associates" (4-7 years), "experienced federal court litigators" (8-10 and 11-19 years), and "very experienced federal court litigators" (20 years or more). *See Laffey v. Northwest Airlines, Inc.,* 572 F. Supp. 354 (D.D.C. 1983).

| Paralegals & Law Clerks | 105 | 110 | 115 | 120 | 125 |
|---|---|---|---|---|---|

Based on the reasonable market rates in the "Laffey Matrix," the attached affidavits and attorney profiles, and other authority provided to this Court in Plaintiff's Petition for Attorney's fees, the hourly rates sought by Plaintiff's attorneys are reasonable and should be awarded in full.

### d. <u>The Affidavits Of Numerous Consumer Protection Attorneys Provide Support For The Hourly Rates And Time Requested By Plaintiff.</u>

Several consumer protection attorneys familiar with the claims brought herein have reviewed the hourly rates and time entries of Plaintiff's attorneys.  These attorneys have each attested that the rates and time incurred by Plaintiff's counsel are reasonable.  <u>See</u> Combined Affidavits of Consumer Advocates, attached hereto as Exhibit "G".  These consumer protection attorneys have a wealth of experience in trial and appellate advocacy, and have displayed this expertise within the legal community by teaching continuing legal education courses and seminars, and by publishing articles in various legal journals.  These advocates have cumulatively represented thousands of consumers throughout the nation and have handled numerous consumer actions including claims brought pursuant to the FDCPA.  Therefore, based on the experience of these attorneys in the area of consumer protection litigation, it is clear that they have obtained the experience and qualifications necessary to present their opinions to this Court as to the reasonableness of Plaintiff's attorneys' fees.

### 6. __Whether the fee is fixed or contingent.__

In a FDCPA case, the fee is contingent upon success of the case. In this private attorney general case, Congress encourages counsel to bring suit, recognizing that counsel cannot charge the client an hourly fee, because the fee may be out of proportion to the recovery. *Johnson*, 488 F.Supp. at 718, ruled that the fixed/contingent nature of the fee was important because, "In no event, however, should the litigant be awarded a fee greater than he is contractually bound to pay, if indeed the attorneys have contracted as to an amount." This portion of the ruling was expressly rejected by the Supreme Court in *Blanchard v. Bergeron*, 489 U.S. 87, 93, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 (1989): "But as we see it, a contingent-fee contract does not impose an automatic ceiling on an award of attorney's fees and to hold otherwise would be inconsistent with the statute and its policy and purpose." Conversely, the Court ruled that the fee award does not impose a cap on a contingent fee agreement; the attorney can get more from his client (not from the opponent) if his agreement so provides. *Venegas v. Mitchell*, 495 U.S. 82, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990). Nor does the contingency factor provide a basis for an upward adjustment of the fee request. *City of Burlington v. Dague*, 505 U.S. 557, 112 S. Ct. 2638, 120 L.Ed.2d 449 (1992). Thus, the current cases hold that the fixed or contingent nature of the fee agreement neither reduces nor enhances the fee award. If contingent, the fee award should compensate counsel for the risk of receiving no compensation. *Blum,* 465 U.S. at 903. "Lawyers operating in the marketplace can be expected to charge a higher hourly rate when their compensation is contingent on success than when they will be promptly paid, win or lose." *Id.* at 905.  Thus, this factor is not significant in this context.

### 7.    Time limitations imposed by the client or the circumstances.

The time limits in this case are imposed by the short 1 year statutes of limitations, the Rules, and the constraints of federal practice which, compared to state court, may be fairly referred to as the "Rocket Docket".

### 8.    The amount involved and the results obtained.

"[C]ourts generally will not look to the size of the damage award in determining a reasonable attorney's fee in consumer cases." *Smith v. Chapman*, 436 F. Supp. 58, 66 (W.D. Tex. 1977). An attorney's fee award should not be reduced based on the amount of damages recovered. *City of Riverside,* 477 U.S. at 574.  In *Yohay v. City of Alexandria Employees Credit Union*, 827 F.2d 967 (4th Cir. 1987), the Fourth Circuit addressed the issue of proportionality between the consumer's recovery and the amount of attorney's fees to be awarded in a Fair Credit Reporting Act case.  In rejecting a claim that by the defendant urging proportionality, the Fourth Circuit stated:

> Proportionality of attorney's fees to the amount recovered is not required in every action brought pursuant to the FCRA. Since there will rarely be extensive damages in an FCRA action, requiring that attorney's fees be proportionate to the amount recovered would discourage vigorous enforcement of the Act. *Id.* at 974.

In *Yohay*, the Fourth Circuit cited the United States Supreme Court opinion in *Riverside v. Rivera*, supra. In *Riverside*, 106 S.Ct. at 2694, the Supreme Court stated:

> We reject the proposition that fee awards under (the Civil Rights Act) should be proportionate to the amount of damages a civil rights plaintiff actually recovers.

In *Jones*, 2000 U.S. Dist. LEXIS 19026, the Court awarded $17,766.49 in costs, litigation expenses and attorney's fees for service as a private attorney general in an FDCPA case. The merits opinion awarding $1,000.00 in statutory damages and less than that in actual damages is reported at *Jones*, 2000 U.S. Dist. LEXIS 18413. Following the Fourth Circuit's ruling that there

is no requirement that there be proportionality between the amount of the consumer's recovery under Consumer Credit Protection Act statutes such as the Fair Credit Reporting Act and the amount of attorney's fees to be paid to the consumer's attorney for asserting rights under the Act, this Court has regularly applied the lodestar method to FDCPA actions in calculating fee awards, notwithstanding the sometimes smaller amount of the consumer's recovery. Compare, for example, the rulings on the merits in *Withers*, 988 F. Supp. 942 (E.D. Va. 1997) ($1,000.00 in statutory damages awarded at summary judgment), to the fee awards granted, *Withers,* 997 F. Supp. 738 (Full award of $5,605.00 requested in costs and attorney's fees); *Creighton v. Emporia Credit Service, Inc.*, 981 F. Supp. 411 (E.D. Va. 1997) ($750.00 awarded at summary judgment to each of two consumer plaintiffs in consolidated actions), *Creighton v. Emporia Credit Service, Inc.*, 1998 U.S. Dist. Lexis 6589 (E.D. Va., 1998) ($10,710.00 awarded as attorney's fees based on total request of $11,080.00); *Morgan v. Credit Adjustment Board*, 999 F. Supp. 803 (E.D.Va. 1998) ($300.00 awarded at summary judgment to each of two consumer plaintiffs in consolidated actions), *Morgan v. Credit Adjustment Board*, 1998 U.S. Dist. Lexis 8135 (E.D. Va. 1999) (Full award of $13,371.41 requested in costs and attorney's fees, including time spent litigating the fee petition. An Amended Order awarding $1,200.00 for the additional time spent preparing a reply brief to the Defendant's Opposition to Plaintiffs' Motion for Attorney's Fees is not reflected in the Lexis opinion.) With the natural increase that has occurred in market rates, the range between the merits recoveries and the fee awards in each of these cases would of course be even greater today.

As long as the plaintiff is successful, that is, recovers more than nominal damages, the plaintiff should be awarded attorneys fees pursuant to a lodestar calculation. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598, 121 S. Ct.

1835, 149 L. Ed. 2d 855 (2001). When the plaintiff recovers the full amount of statutory damages allowed by a federal consumer protection statute, a full award should be made. *Nigh,* 478 F.3d at 186(upholding an award of fees even for the time spent on issues on which the plaintiff did not prevail.). Regarding recovery of $1,000.00 in statutory damages, the Fourth Circuit explained "[e]ven after the Supreme Court's reduction of Nigh's monetary recovery, he receives that maximum. Koons's contention that this recovery is somehow *de minimis* betrays a profound misunderstanding of either the expression or the facts of this case. Nigh received the maximum recovery permissible under the TILA." *Id.* at 190. The Eleventh Circuit, on February 22, in *Danow v. Law Office of David E. Borack, P.A.,* 2010 WL 597213 (11th Cir. 2010), affirmed the award of attorneys' fees of $62,895.00 plus costs of $715.60 in an FDCPA case although the consumer recovered $1,000 damages.

"In the absence of any indication that Congress intended to adopt a strict rule that attorney's fees under section 1988 be proportionate to damages recovered, we decline to adopt such a rule ourselves." *City of Riverside* 477 U.S. at 581 (footnote omitted); s*ee also Quaration v. Tiffany & Co.*, 166 F.3d 422 (2d Cir. 1999); *Zagorski*, 128 F.3d 1164. The benefits to the public as a whole resulting from lawsuits which encourage compliance with statutory provisions are more important than relatively small damage awards. Indeed, when a provision for counsel fees is included in a regulatory act, it is a recognition that enforcement of the statute would be unlikely if an individual had to pay his or his own attorney fees. The Supreme Court quoted Senator Tunney's remarks in the Congressional Record:

> If the citizen does not have the resources, his day in court is denied him; the congressional policy which he seeks to assert and vindicate goes unvindicated; and the entire nation, not just the individual citizen, suffers.

*City of Riversid*, 477 U.S. at 575 (citation omitted).

The Third Circuit amplified this thought stating:

> Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.

*Student Public Interest Research,* 842 F.2d at 1449. "Congress has relied on such plaintiffs to act as private attorneys general." Id., at 1450 n.13. Also see *Graziano* 950 F. 2d at 113.

Rather, upon finding a statutory violation and damages, the attorney fees award should be made in the lodestar amount. *Johnson v. Eaton*, 80 F.3d 148 (5th Cir. 1996).  For example, in *Armstrong v. The Rose Law Firm, P.A.*, 2002 WL 31050583, 2002 U.S. Dist. LEXIS 16867 (D.Minn., Sept. 4, 2002), the district court approved the award of $43,180.00 in attorney fees where the plaintiff recovered $1,000 in statutory damages. The Southern District of Florida has affirmed the bankruptcy court's award of attorney fees of $29,037.50 where the plaintiff recovered FDCPA statutory damages of $1,000.00. *In re Martinez*, 266 B.R. 523, 544 (Bankr. S.D.Fla. 2001), *aff'd* 271 B.R. 696 (S.D.Fla. 2001). In *Perez v. Perkiss*, 742 F.Supp. 883 (D. Del. 1990), the district court awarded $10,110 in attorney fees where plaintiff's recovery was only $1,200.00.   "When a plaintiff has obtained excellent results, his attorney should recover a full compensatory fee." *Hensley*, 461 U.S. at 435.

The Plaintiff here secured an Offer of Judgment and Defendant agreed to pay costs and attorneys' fees as determined by agreement of the parties or of the Court. The Offer of Judgment provided that Plaintiff would receive $1,000.  This amount is the maximum statutory amount. Hence, as noted above, Plaintiff's counsel should be entitled to their full fees and costs.

**9.    The experience, reputation and ability of the attorney.**

The experience, reputation, and ability of Mr. Kimmel are reflected in the attached Certification, and as state above. He has vast experience with consumer actions litigated in

federal court. His experience, reputation, and ability are reflected in his hourly rates discussed under factor 5. <u>See</u> also Exhibits "C". Given that Plaintiff's counsel is asking for less than the sum of their time and expenses, this factor makes their request particularly reasonable.

### 10. <u>The undesirability of the case.</u>

As stated, there are very few lawyers in the Commonwealth who would devote any part of their practice, much less their entire practice, to bringing cases on behalf of consumers. Kimmel & Silverman <u>only</u> handles consumer related cases and at no cost to the consumer and has operated in this way since 1991, taking "undesirable" consumer claims and generating excellent results. This factor would normally be justification for an increase in the lodestar and thus the request for less than the full time expended is very reasonable.

### 11. <u>The nature and length of the relationship with the client.</u>

Plaintiff's counsel was retained particularly for pursuit of this claim in federal court on specialized consumer protection law issues. Their employment was sought because of their legal abilities and reputation in this area of the law. This *Johnson* factor is in some respects inapplicable or neutral to an attorney whose representation is limited to consumer protection claims, which are transactional, and not ongoing, matters.

### 12. <u>Awards in similar cases.</u>

Awards in similar cases have been addressed throughout this brief, but particularly in paragraphs 5 and 9, *supa*.

### D.  **PLAINTIFF REQUESTS REIMBURSEMENT FOR COSTS EXPENDED**.

Plaintiff seeks $350 in litigation costs incurred in relation to this matter.  See Exhibit "B".

Plaintiff has voluntarily not sought other costs (more than $100) consisting of copy charges,

postage and telephone, to avoid an unnecessary dispute that may arise from same.


WHEREFORE, Plaintiff respectfully requests that this Court enter an order awarding

Plaintiff, and his counsel, attorneys' fees in the amount of $2,575.50and costs in the amount of

$350.00 for a total of $2,925.50.

Respectfully submitted,

Kimmel & Silverman, LLC


By: /s/ Craig Thor Kimmel
    Craig Thor Kimmel
    Attorney ID # 57100
    Kimmel & Silverman, P.C.
    30 E. Butler Pike
    Ambler, PA 19002
    Phone: (215) 540-8888
    Fax: (215) 540-8817
    Email: kimmel@creditlaw.com

Dated: September 28, 2010